### In the Matter of Frank W. RICCI.

No. 98S00–0001–DI–35.

Court of Appeals of Indiana.

July 26, 2001.

### *ORDER ACCEPTING RESIGNATION AND CONCLUDING PROCEEDING*

The respondent, Frank W. Ricci, has tendered to this Court his affidavit of resignation from the bar of this State, pursuant to Ind.Admission and Discipline Rule 23, Section 17, which provides, *inter alia,* that an affidavit of resignation must acknowledge that the material facts alleged by the Disciplinary Commission are true and that the respondent submits his resignation because he knows that if the proceeding were prosecuted, he could not successfully defend himself.

This Court, being duly advised, now finds that, in its 19–count *Verified Complaint for Disciplinary Action,* the Commission states that the respondent was admitted to the practice of law in the state of Indiana in 1987, but that he placed his law license on inactive status on October 21, 1999. He was not admitted to practice in any other state. On August 14, 2000, this Court suspended the respondent from the practice of law *pendente lite* upon notice of the respondent being found guilty,

in federal district court, of the crime of money laundering, in violation of 18 U.S.C. 1956(a)(3)(b). *Matter of Ricci,* 733 N.E.2d 466 (Ind.2000).

The verified complaint provides further that the respondent used his Indiana license as the basis for a multi-jurisdictional practice, namely, pursuing immigration law in the state of Florida. In recent years, he actively marketed his legal services to assist foreign nationals to obtain American visas under an eligibility category for foreign entrepreneurs created by Section 203(b)(5) of the Immigration and Nationality Act, known as EB–5 visas. The EB–5 visa is a visa category for foreign nationals who are willing to invest substantial sums of money in American start-up enterprises. The basic EB–5 visa category requires a $1 million investment in an American business that will create 10 new jobs over a period of two years. A sub-category provides for an investment of $500,000 if the business locates and creates jobs in a predetermined economic hardship area. Following conditional approval of the visas, the Immigration and Naturalization Service (INS) will remove the condition after two years provided proof of compliance. At that point, the applicant/investor and all members of the investor's family are eligible to receive permanent resident visas. Once permanent residence status is granted, the applicant/investor is under no obligation to maintain the investment.

The verified complaint states that the respondent's approach to securing EB–5 eligibility was to have applicants invest $100,000 in an American business enterprise, and that the balance of $400,000 was to be made up of debt. The respondent assured the applicants that at the end of three years they would be able to sell their investments for at least the principal sums invested. The respondent's "transaction fee" ranged between $20,000 and $40,000. The respondent was associated with an investment entity that organized investment vehicles for the applicants and arranged loans for them. Typically, the respondent would hold the applicant's $100,000 in an escrow account pending conditional approval of the EB–5. In December 1997, the INS issued an opinion letter stating that the respondent's approach to visa eligibility was not based upon legitimate investments. The INS began deferring action on EB–5 visa applications patterned on this approach.

In October 1997, the respondent filed a voluntary petition for bankruptcy in his name and in the name of his law practice. In schedules of personal property, the respondent listed three bank accounts containing an aggregate of about $200. Total assets listed were $1,784,823.07, the vast majority of which were balances of loans the respondent claimed he made to others. On the schedule of unsecured nonpriority creditors, the respondent scheduled $7,615,492 .90 in debts, under the names of 63 individuals whom the respondent contended were owed debts of at least $100,000 each and who were the respondent's clients, applicants under the EB–5 visa services he provided. By so listing these persons as creditors, the respondent conceded that their funds were no longer in escrow.

Because the respondent's *Affidavit of Resignation* satisfies the requirements of Admis.Disc.R. 23(17), we find that it should be accepted.

IT IS, THEREFORE, ORDERED that the resignation from the bar of this state tendered by the respondent, Frank W. Ricci, is hereby accepted. Accordingly, the Clerk of this Court is directed to strike his name from the Roll of Attorneys. In order to be readmitted, he must comply

with the reinstatement provisions contained in Admis.Disc.R. 23(4).

IT IS FURTHER ORDERED that, by virtue of the respondent's resignation from the bar of this state, all attorney disciplinary proceedings pending against him are hereby dismissed as moot.

The Clerk of this Court is directed to forward notice of this Order to the respondent or his attorney, to the Indiana Supreme Court Disciplinary Commission, and to all other entities pursuant to Admis.Disc.R. 23(3)(d).

All Justices concur.